LAND, J.
Plaintiff sued to recover $2,-608.62 as damages for the alleged failure of the defendant to deliver lumber pursuant to the terms of a written contract between the parties.
Defendant pleaded an exception of no cause of action, which was referred to the merits. For answer the defendant alleged that plaintiff did not comply with the obligations of the contract in the matter of sending inspectors and of making cash advances on lumber ready for delivery, and that both parties mutually agreed that the contract should continue no longer than was necessary to deliver all lumber then on hand.
There was judgment in favor of the plaintiff as prayed for, and the defendant has appealed.
The contract called for not less than 500,-000 feet of cypress and ash lumber to be delivered by defendant on board of the cars at Oottonport between July 10 and December 31, 1906. Defendant delivered only 127,340 feet of lumber within the term fixed by the contract. The uncontradicted evidence shows that by this default of the defendant the plaintiff was deprived of profits, at the rate of $7 per M., on 372,660 feet of lumber, amounting to $2,608.62.
The parol agreement to terminate the contract set up in the answer is not sustained by the evidence. Ducote testified to the making of such an agreement with Williams, the president of the company; but Williams denies the alleged agreement, and his testimony is corroborated by that of another witness, who was present at the interview, and also by the circumstances that subsequently advances were made and lumber delivered under the contract.
The contract required the plaintiff to send an inspector to defendant’s mill on the 1st and 15th of each month; but the contract also required the defendant to notify the plaintiff at the end of each month what lumber had been piled under the contract. Defendant never did give any such notice. Plaintiff’s inspectors were at the mill from time to time, but not on the 1st and 15th of each month. Plaintiff was never notified to send inspectors at any particular time. Under the terms of the contract, when lumber was piled on the railway right of way, cash advances were to be paid by defendant’s draft on the company, with bill of sale authenticated by an inspector, and insurance policy attached. On August 1, 1906, the defendant drew his draft on the company on an estimate and bill of sale signed by H. P. Audebert, who had charge of the mill. The bill of sale included 17,000 feet of oak lumber not within the contract, and other lumber not on the right of way for shipment, and, besides, was not signed by an inspector. Payment of the draft was properly refused. Defendant thereupon went to New Orleans and had (in the language of his answer) “hot words” with the president of the company. As the final result of this interview an inspector accompanied the defendant to his mill and accepted such lumber as was ready for shipment under the contract. Several shipments were thus made, and advances paid thereon, until the supply of lumber was exhausted. On December 11, 1906, a settlement of accounts' was made between the parties.
On December 26th plaintiff wrote to defendant, in part, as follows:
“We desire to call your attention to the fact that on December 31st you will be in default under the contract we have with you unless you can get together the balance of the lumber due us by that time. We will have one of our inspectors at Oottonport on December 31st to accept any lumber which you may have to tender under the contract. If you are not going to have any lumber at that time, please advise us what arrangements you care to make relative to the extension of the contract.”
*1055 Defendant made no response. On December 31, 1906, the company wrote to the defendant, notifying him that he was in default for nondelivery of lumber under the contract and that he would be held for all resulting loss or damages. This letter was handed to defendant on January 1, 1907.
Defendant had no lumber on hand at that time, and told the bearer of the letter that he would deliver no more lumber to the ■company under the contract. Defendant had previously notified the same inspector that he desired to be released from the contract and would deliver no more lumber under its provisions.
Defendant’s counsel contends (1) that the plaintiff corporation does not appear through Its president, duly authorized by the board ■of directors. In N. O. Terminal Co. v. Teller, 113 La. 733, 37 South. 624, this court held that a corporation can sue in its own name, without designating its president or any of its other officers in the petition. In such a ■case the corporation appears through its attorney, who is presumed to have been properly authorized by the corporation to institute the suit.
Counsel contends (2) that the defendant was not legally put in default for the nonperformance of his contract. None was necessary. Defendant denies in his answer and his testimony the continued existence of any ■contract with plaintiff after December 11, 1907. Beck v. Fleitas, 37 La. Ann. 492. Defendant not only declared repeatedly that he would not deliver any more lumber under the contract, but as a matter of fact did not have the lumber to deliver on or before December 31, 1906. Allen, West & Bush v. Steers, 39 La. Ann. 589, 2 South. 199. The law does not in such a case exact the vain, idle, and useless ceremony of a default. Dwyer Bros. v. Administrators, 47 La. Ann. 1232, 17 South. 796. We are not to be understood as holding that a default is necessary in a case where the obligor binds himself to manufacture aqd deliver lumber within a certain fixed time.
Counsel contends (3) that the plaintiff violated the obligations of the contract. In a technical sense, neither party did all that the letter of the contract required. Plaintiff complied substantially with all the obligations of the agreement.
Counsel contends (4) that the loss of profits is not proven with sufficient certainty. The extent of the damages claimed was not controverted in the lower court. We think that the testimony of Mr. Williams, an expert, corroborated, as it Is, by the lumber price lists for 1906, suffices to prove the extent of the loss.
Judgment affirmed.